# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| REBECCA DADISMAN and JUSTIN DADISMAN individually and as Natural Parent and Legal Guardian of B.D. DOE, a minor, *Plaintiffs,* | Case No. |
| | **COMPLAINT FOR DAMAGES AND FOR MANDATORY INJUNCTIVE RELIEF** |
| v. | |
| **PETTISVILLE LOCAL SCHOOLS BOARD OF EDUCATION, KEN BOYER, JASON WALDVOGEL, TORI JORDAN, and ERINN THOMPSON, and DOES 1 – 20, inclusive,** | **JURY TRIAL DEMANDED** |
| *Defendants.* | |

**NOW COMES** Plaintiffs, REBECCA DADISMAN and JUSTIN DADISMAN, individually and as Natural Parent and Legal Guardian of B.D. DOE, a minor child, by and through their attorneys, The Law Office of Keith Altman, and for their Complaint against Defendants, hereby state the following:

**COMPLAINT**                           - 1 -

1.      This is an action seeking damages for Defendants' violation of the due process of law under 42 U.S.C. §1983 and 20 U.S.C. §1681.

2.      Plaintiff also brings state claims under the law of the State of Ohio.

## **PARTIES**

3.      Rebecca Dadisman is a citizen and resident of Ohio as well as the parent and legal guardian of B.D. DOE, a minor child.

4.      Justin Dadisman is a citizen and resident of Ohio as well as the parent and legal guardian of B.D. DOE, a minor child.

5.      B.D. DOE in a minor child and was formerly a student who attended elementary school classes at Pettisville Elementary School until approximately May 18, 2021.  His parents Rebecca Dadisman and Justin Dadisman bring this suit on his behalf.

6.      Pettisville Local School is a public K-12 school in Pettisville, Ohio in the Pettisville Local School District.  The Pettisville Local School District is governed by Defendant Pettisvile Local School District Board of Education (hereafter "PLS").  Defendant PLS is being sued in its official capacity.

7.      On information and belief, The Pettisville Local School District is a recipient of Federal Funding.

8.      On information and belief, at all times relevant to this action, Defendant KEN BOYER (hereafter "BOYER") was employed by PLS as the Superintendent of Schools.  Defendant BOYER is sued in his individual capacity.

9.      On information and belief, at all times relevant to this action, Defendant JASON WALDVOGEL (hereafter "WALDVOGEL") was employed by PLS as an Elementary Principal and compliance officer.  Defendant WALDVOGEL is sued in his individual capacity.

10.      On information and belief, at all times relevant to this action, Defendant TORI JORDAN (hereafter "JORDAN") was employed by PLS as an Elementary Counselor.  Defendant JORDAN is sued in her individual capacity.

11.      On information and belief, at all times relevant to this action, ERINN THOMPSON (hereafter "THOMPSON") was employed by PLS as an Elementary Teacher.  Defendant THOMPSON is sued in her individual capacity.

12.     Defendants DOES 1-20 (hereafter "DOE Defendants") are individuals who are or were employed by PLS during the period of B.D. DOE's enrollment. The names and job titles of the DOE DEFENDANTS are currently unknown. DOE Defendants are sued in their individual capacities.

13.     On information and belief, during all times relevant to this action, Defendants BOYER, WALDVOGEL, JORDAN, THOMPSON, and DOE DEFENDANTS (hereafter "individual Defendants") were employed by PLS at all times relevant to Plaintiff's suit.

## JURISDICTION & VENUE

14.     This action arises under the laws of the United States, and therefore this Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 (federal question).

15.     This action arises under the following federal statutes: 42 U.S.C. §1983, 20 U.S.C. §1681. In accordance with 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over Plaintiff's state law claim for negligence. This is because this state law claim is so

closely related to the federal question claim that it forms the same case or controversy under Article III of the United States Constitution.

16.      This Court properly exercises personal jurisdiction over Defendant PLS because it is domiciled within the Northern District of Ohio.

17.      This Court properly exercises personal jurisdiction over the individual Defendants because they are domiciled within the Northern District of Ohio.  Furthermore, the individual Defendants were employees of PLS at all relevant times herein and personally violated certain laws, rights, and policies, the effects of which were felt in the Northern District of Ohio.

18.      The proper venue for this case is in the United States District Court for the Northern District of Ohio, because the events relevant to this action occurred within Fulton County in the Northern District of Ohio.

## FACTUAL ALLEGATIONS
### Touching Incident

19.     Before the incidents set out in this complaint, B.D. DOE was praised as a hard worker and dependable student by his teachers at PLS.

20.     Sometime in 2020, B.D. DOE was subject to a full-frontal exposure by another boy in the locker room at PLS.

21.     In 2020, the same boy touched B.D. DOE with his open hand through his clothes on the genitals on multiple occasions.

22.     Also in 2020, the same boy pinched B.D. DOE's butt on the recess playground. When B.D. DOE told him to stop, the boy reached around and pinched B.D. DOE's genitals.

23.     These incidents were motivated by a perception by the offender that B.D. DOE deviated from expected male gender roles. The offender had called B.D. DOE "gay" on multiple occasions.  By sexually harassing B.D. DOE, the offender wished to humiliate B.D DOE on this basis.

24.     These incidents of sexual harassment have left B.D. DOE deeply traumatized.

## Reports To PLS Staff

25.     In April 2020, B.D. DOE's PARENTS noticed that he had become incredibly anxious and sensitive. They sent him to Ms. Veronica Laverde, a child therapist at Perrysburg Counseling Services.

26.     B.D. DOE was initially diagnosed with a generalized anxiety disorder.

27.     B.D. DOE's PARENTS signed a release form with Perrysburg Counseling Services guaranteeing that Defendant JORDAN, a school counselor at PLS would be made aware of B.D. DOE's struggles as they were communicated in his therapy sessions.

28.     In the summer of 2020, B.D. DOE's assessment was changed to an obsessive-compulsive disorder "OCD" diagnosis based upon a display of obsessive thoughts.

29.     In October 2020, B.D. DOE confided in his teacher, Defendant THOMPSON, that a boy in his class had inappropriately touched him.

30.     Defendant THOMPSON advised B.D. DOE to speak to Defendant JORDAN.

31.     Subsequently, B.D. DOE told Defendant JORDAN the full extent of what had happened to him, including the touching, pinching, and the full, frontal exposure. Defendant JORDAN then reported B.D. DOE's admission to Defendant WALDVOGEL, PLS' Compliance Officer.

32.     All of these incidents are reportable offenses per PLS policies. Yet, the information that B.D. DOE shared was not documented by Defendant JORDAN. Nor was this information acted upon by Defendant WALDVOGEL. These were adults that B.D. DOE trusted. This lack of reporting was an overt failure to protect B.D. DOE after he had desperately turned to them for help.

33.     During this time, B.D. DOE was forced to spend time with the offender during classes.

34.     B.D. DOE's condition worsened to the point that in November of 2020, B.D. DOE choked himself in the school's bathroom and cut himself with scissors. Both Defendant JORDAN and Defendant WALDVOGEL were aware of these incidents.

35.     Because of B.D. DOE's worsening mental condition, he was moved to a partially online schooling program whereby he took his

math and science class online from home.  However, this did not prevent B.D. DOE from coming into contact with the offender because they had the same homeroom class.  B.D. DOE was not able to take homeroom class online and PLS staff made no effort to move B.D. DOE to a different homeroom class.

## Failure to Report

36.     Despite their knowledge of the traumatic experiences B.D. DOE has and was continuing to endure and was battling, neither Defendant JORDAN nor Defendant WALDVOGEL made any attempt to help B.D. DOE. Instead, they continued to force B.D. DOE to face the offender daily in the classroom with no offer of support or protection.

37.     On November 10, 2020, due to the continued trauma, B.D. DOE was moved to a suicide prevention protocol by Ms. Laverde.

38.     Sometime between January 2021 and April 2021, B.D. DOE told Ms. Laverde about the full extent of his sexual harassment and that he had reported it to Defendant Jordan.

39.     In May 2021, B.D. DOE asked Defendant JORDAN if she would be willing to be in the room with him when he told the offender that he did not want to be friends with him anymore, as he was scared to do it alone. This was B.D. DOE's way of taking his healing into his own hands.

40.     Defendant JORDAN denied B.D. DOE's request, despite knowing his reasons for it. Her denial made B.D. DOE subject to continued trauma by continuing daily interacts with the offender while attending school.  The denial of support and protection led to panic for B.D. DOE.

41.     On May 13, 2021, Plaintiffs, Rebecca and Justin Dadisman met with Defendant WALDVOGEL and Defendant JORDAN.

42.     During this meeting, Rebecca and Justin Dadisman were made aware that PLS and its employees had done nothing to address the situation. In fact, B.D. DOE had not received any support or protection from PLS employees after he had asked them for help.

43.     Defendant WALDVOGEL said that the boy was "just trying to be friends." He also said that he would now tell the offender to

stay away from B.D. DOE, but that he would not tell the offender why because he did not want to "accuse" the offender of any wrongdoing.

44.     During this meeting, it was also decided that B.D. DOE would not attend homeroom in the mornings. This would prevent him from having to be in the same classroom as the offender. Since the victim, B.D. DOE, was removed from the class, not the offender, this action set the tone that B.D. DOE was wrong to say anything and was thus being punished for seeking help.

45.     On May 14, 2021, Plaintiff Rebecca Dadisman emailed Defendant WALDVOGEL to ensure that the school had finally reported the incidents.

46.     Only after this email, was she given a PLS harassment report to file against the offender.

47.     PLS finally reported the incidents to Child Protection Services on May 14, 2021 – approximately six months after B.D. DOE first turned to PLS employees for help.

48.     On May 18, 2021, B.D. DOE was forced to withdraw from the PLS school system entirely because of the hostile learning environment he had been subjected to.

49.      B.D. DOE has suffered and will continue to suffer from the trauma that PLS employees chose to ignore. He will need extensive therapy for any indeterminate amount of time to heal from the trauma caused by the sexual harassment he suffered as well as the continued trauma caused by PLS' employees' failure to support and protect him.

## FIRST CAUSE OF ACTION
VIOLATION OF PROCEDURAL DUE PROCESS
UNDER 42 U.S.C. §1983.
(As to all Individual Defendants)

50.     Plaintiffs incorporate by reference as if fully stated herein, Paragraph Nos. 1-49 of their Complaint in their entirety.

51.     Plaintiff, B.D. DOE, had a constitutionally protected and clearly established a property interest in continuing his education at the PLS.

52.     The acts or omissions of the individual Defendants set forth in this complaint were undertaken in a reckless manner according

to Ohio Revised Code § 2744.03(6)(b). Furthermore, the acts or omissions of the individual Defendants set forth in this complaint were undertaken manifestly outside the scope of their employment or official responsibilities according to Ohio Revised Code § 2744.03(6)(a).

53. When Defendants failed to protect B.D. DOE from harm at the hands of another child, B.D. DOE suffered profound emotional damage and was rendered unable to continue his education.

54. The sexual harassment that B.D. DOE endured had such a negative effect on B.D. DOE's mental state that it effectively deprived B.D. DOE of the educational benefits provided by PLS.

55. The deprivation of B.D. DOE's educational benefits manifested itself in numerous ways, including, but not limited to:

    a. B.D. DOE engaging in suicidal behavior in November of 2020 which led to his moving to a partially online curriculum thereby disrupting his normal educational experience.

    b. Throughout the 2020-2021 school year, B.D. DOE was experiencing extreme emotional damage and trauma by being

exposed to his offender on a daily basis. This emotional burden completely disrupted B.D. DOE's ability to learn.

    c. On May 18, 2021, B.D. DOE was forced to withdraw from the PLS school system entirely because of the hostile learning environment he had been subjected to.

56. The trauma that B.D. DOE experienced rendered him unable to enjoy the full benefits of his education.

57. PLS was made aware of the sexual harassment in October of 2020 when B.D. DOE disclosed the sexual harassment he had suffered to Defendants JORDAN, THOMPSON and WALDVOGEL.

58. Despite having full knowledge of the sexual harassment suffered by B.D. DOE, PLS took no actions whatsoever to document, report, or investigate it. PLS also failed to take any remedial action with respect to protecting B.D. DOE from further emotional harm in being exposed to the perpetrator of the sexual harassment.

59. In fact, when B.D. DOE attempted to take his healing into his own hands and tell the offender that he "doesn't want to be friends anymore", this attempt was completely shut down by Defendant

JORDAN and Defendant WALDVOGEL, thereby causing B.D. DOE to experience further emotional harm.

60.     DOE Defendants violated B.D DOE's constitutional rights in manner to be determined during the course of the present litigation.

61.     As a direct and proximate cause of the actions of the individual Defendants, B.D DOE was deprived of his constitutional right to an education.

62.     Plaintiffs request a judgment granting Plaintiffs injunctive relief, in the form of a full and fair investigation of the egregious failure of all Defendants to protect B.D. DOE from sexual harassment and the unconscionable delay in reporting the harassment as required by law.

63.     Plaintiffs request a judgment granting Plaintiff injunctive relief, in the form of appropriate discipline of each of the individual Defendants by PLS for the egregious failure of the individual Defendants to protect this child from sexual harassment and for the unconscionable delay in reporting the harassment as required by PLS policy.

64.     The emotional, and physical harm that B.D. DOE has suffered and will continue to suffer was caused directly and proximately by the Defendants' unlawful conduct. Furthermore, Defendants' conduct has resulted in significant expenses for B.D DOE's therapy in an amount that shall be determined through the course of litigation.

65.     Plaintiffs request a judgment awarding Plaintiff reasonable attorney's fees and costs of this action.

## SECOND CAUSE OF ACTION
VIOLATION OF SUBSTANTIVE DUE PROCESS
UNDER 42 U.S.C. §1983.
(As to Defendants Waldvogel and Jordan)

66.     Plaintiffs incorporate by reference as if fully stated herein, Paragraph Nos. 1-49 of their Complaint in their entirety.

67.     B.D DOE has a fundamental right to bodily autonomy that was clearly established at all times relevant to this action.

68.     The acts or omissions of the individual Defendants WALDVOGEL and JORDAN set forth in this complaint were undertaken in a reckless manner according to Ohio Revised Code § 2744.03(6)(b). Furthermore, the acts or omissions of the individual

Defendants WALDVOGEL and JORDAN set forth in this complaint were undertaken manifestly outside the scope of their employment or official responsibilities according to Ohio Revised Code § 2744.03(6)(a).

69. Between October 2020 and May 2021, Defendants JORDAN and WALDVOGEL had knowledge of the sexual harassment that B.D. DOE suffered.

70. Throughout this time, Defendants JORDAN and WALDVOGEL made representations to B.D. DOE's parents that actions were being taken to investigate the sexual harassment that B.D. DOE has suffered.

71. Defendants JORDAN and WALDVOGEL also made representations to B.D. DOE's parents that remedial actions were being taken by the school to mitigate the harm that B.D. DOE would suffer as a result of the trauma from his sexual harassment.

72. These misrepresentations amount to deliberate indifference which would shock the conscience of a reasonable person because Defendants JORDAN and WALDVOGEL were aware of the sexual harassment suffered by B.D. DOE and chose not to investigate nor

take an action to prevent B.D. DOE from being exposed to the offender.

73.     By virtue of their professional roles, Defendants JORDAN (School Guidance Counselor) and WALDVOGEL (Harassment Compliance Officer) should have understood the harm they were causing B.D. DOE by failing to investigate his sexual harassment and failing to prevent his exposure to the offender.

74.     As a result of these misrepresentations, B.D. DOE was put in increased danger of harm as his parents were put under the impression that he was not suffering harm by being exposed to the offender on a daily basis. This prevented B.D. DOE's parents from taking actions that could have mitigated or prevented B.D. DOE's continued exposure to the offender.

75.     As a result of B.D. DOE's daily exposure to the offender, his mental state deteriorated to the point where he committed acts of self-harm including choking himself and cutting himself with scissors.

76.     The danger that was created by Defendants JORDAN and WALDVOGEL was unique to B.D. DOE, not shared by the general student population of PLS.

77.     As a direct and proximate cause of the actions of Defendants JORDAN and WALDVOGEL, B.D. DOE's constitutional right to bodily autonomy was violated.

78.     Plaintiffs request a judgment granting Plaintiffs injunctive relief, in the form of a full and fair investigation of the egregious failure of all Defendants to protect this B.D. DOE from sexual harassment and the unconscionable delay in reporting the harassment as required by law.

79.     Plaintiffs request a judgment granting Plaintiff injunctive relief, in the form of appropriate discipline against Defendants JORDAN and WALDVOGEL by PLS for their egregious failure to protect this B.D. DOE from sexual harassment and for the unconscionable delay in reporting the harassment as required by PLS policy.

80.     The emotional, and physical harm that B.D. DOE has suffered, and will continue to suffer, was caused directly and

proximately by the Defendants' unlawful conduct. Furthermore, Defendants' conduct has resulted in significant expenses for B.D DOE's therapy in an amount that shall be determined through the course of litigation.

## THIRD CAUSE OF ACTION
VIOLATION OF TITLE IX UNDER 20 U.S.C. §1681.
(As to PLS Defendant)

81.     Plaintiffs incorporate by reference as if fully stated herein, Paragraph Nos. 1-49 of their Complaint in their entirety.

82.     On information and belief, The Pettisville Local School District is a recipient of federal funding.

83.     The sexual harassment that B.D. DOE endured at the hands of his classmate deeply traumatized B.D. DOE.

84.     The trauma that B.D. DOE experienced was compounded by the fact that B.D. DOE was forced to share a classroom with the offender on a daily basis.

85.     The sexual harassment that B.D. DOE endured had such a negative effect on B.D. DOE's mental state that it effectively deprived B.D. DOE of the educational benefits provided by PLS.

86.     The deprivation of B.D. DOE's educational benefits manifested itself in numerous ways, including, but not limited to:

    a. B.D. DOE engaged in suicidal behavior in November of 2020 which led to his moving to a partially online curriculum thereby disrupting his normal educational experience.

    b. Throughout the 2020-2021 school year, B.D. DOE was experiencing extreme emotional damage and trauma by being exposed to his offender on a daily basis.  This emotional burden completely disrupted B.D. DOE's ability to learn.

    c. On May 18, 2021, B.D. DOE was forced to withdraw from the PLS school system entirely because of the hostile learning environment he had been subjected to.

87.     The trauma that B.D. DOE experienced rendered him unable to enjoy the full benefits of his education.

88.     PLS was made aware of the sexual harassment in October of 2020 when B.D. DOE disclosed the sexual harassment he had suffered to Defendants JORDAN, THOMPSON and WALDVOGEL.

89.     Despite having full knowledge of the sexual harassment suffered by B.D. DOE, PLS took no actions whatsoever to document,

report, or investigate it. PLS also failed to take any remedial action with respect to protecting B.D. DOE from further emotional harm in being exposed to the perpetrator of the sexual harassment.

90.     In fact, when B.D. DOE attempted to take his healing into his own hands and tell the offender that he "doesn't want to be friends anymore", this attempt was completely shut down by Defendant JORDAN and Defendant WALDVOGEL, thereby causing B.D. DOE to experience further emotional harm.

91.     The actions of Defendant PLS, in permitting and failing to curtail, prevent or investigate the sexual harassment against B.D. DOE based on a perception about his sexual orientation and allowing plaintiff to be harassed by other students based on his gender and by allowing a hostile school environment based on gender and perceived sexual orientation constitutes a violation of Title IX.

92.     The emotional, and physical harm that B.D. DOE has suffered and will continue to suffer was caused directly and proximately by the Defendants' unlawful conduct. Furthermore, Defendants' conduct has resulted in significant expenses for B.D DOE's therapy

in an amount that shall be determined through the course of litigation.

## **FOURTH CAUSE OF ACTION**
### NEGLIGENCE
(Against All Individual Defendants)

93.     Plaintiffs incorporate by reference as if fully stated herein, Paragraph Nos. 1-49 of their Complaint in their entirety.

94.     Defendants owed a duty to Rebecca Dadisman, Justin Dadisman, and B.D. DOE to protect B.D. DOE from harassment at the hands of other children.

95.     The employee's acts or omissions of the individual Defendants set forth in this complaint were undertaken in a reckless manner according to Ohio Revised Code § 2744.03(6)(b).  Furthermore, the employee's acts or omissions of the individual Defendants set forth in this complaint were undertaken manifestly outside the scope of their employment or official responsibilities according to Ohio Revised Code § 2744.03(6)(a).

96.     Defendants breached their duty of reasonable care by negligently acting or omitting to act in such a way that resulted in B.D. DOE's profound emotional harm and withdrawal from PLS.

Defendants knew or should have known their actions and omissions posed a substantial risk of harm to B.D. DOE.

97.     Plaintiffs made all individual Defendants aware of the sexual harassment of B.D. DOE by another child.

98.     As the Superintendent of schools, BOYER breached his duty under Ohio law:

   a. To protect B.D. DOE from sexual harassment at the hands of other students.

   b. To ensure that the sexual harassment suffered by B.D. DOE was promptly investigated.

   c. To ensure that B.D. DOE did not suffer further harm by being exposed to the offender on a daily basis.

   d. To report the sexual harassment suffered by B.D. DOE at the hands of other students.

   e. To competently supervise the other individual Defendants

99.     As the principal and compliance officer of PLS, WALDVOGEL breached his duty:

   a. To protect B.D. DOE from sexual harassment at the hands of other students.

b. To ensure that the sexual harassment suffered by B.D. DOE was promptly investigated.

c. To ensure that B.D. DOE did not suffer further harm by being exposed to the offender on a daily basis.

d. To report the sexual harassment suffered by B.D. DOE at the hands of another student.

e. To competently supervise JORDAN and THOMPSON.

100.    As B.D. DOE's counselor at PLS, JORDAN breached her duty:

a. To protect B.D. DOE from sexual harassment at the hands of other students.

b. To ensure that the sexual harassment suffered by B.D. DOE was promptly investigated.

c. To ensure that B.D. DOE did not suffer further harm by being exposed to the offender on a daily basis.

d. To report the sexual harassment suffered by B.D. DOE at the hands of another student.

101.    As B.D. DOE's teacher at PLS, THOMPSON breached her duty:

    a.  To protect B.D. DOE from sexual harassment at the hands of other students.

    b.  To ensure that the sexual harassment suffered by B.D. DOE was promptly investigated.

    c.  To ensure that B.D. DOE did not suffer further harm by being exposed to the offender on a daily basis.

    d.  To report the sexual harassment suffered by B.D. DOE at the hands of another student.

102.    DOE Defendants negligently harmed the Plaintiffs in a manner to be established through the course of the present litigation.

103.    By their negligent conduct, the Defendants have inflicted extreme and severe emotional distress on B.D. DOE, who is confronted with profound mental and emotional damages. B.D. DOE has been, and continues to be, treated by a therapist for these symptoms. B.D. DOE had to change from his original therapist to a certified EMDR trauma therapist to cope with the abuse and negligence of the school. He is still in the beginning stages of healing.

104.    The emotional and physical harm that B.D. DOE has suffered and will continue to suffer was caused directly and proximately by the Defendants' unlawful and negligent conduct. Furthermore, Defendants' conduct has resulted in significant expenses for B.D DOE's therapy in an amount that shall be determined through the course of litigation.

105.    As a further direct and proximate result of Defendants' negligence Plaintiff Rebecca and Justin Dadisman have incurred substantial financial costs providing for the treatment of her son because of the Defendants' unlawful and negligent conduct. Furthermore, Defendants' negligent actions have directly and proximately caused Rebecca and Justin Dadisman to suffer immense emotional harm along with physical manifestations of that emotional harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs requests that this Court grant them relief as follows:

1.      Compensatory damages for monetary loss, and for the

Plaintiffs' humiliation, mental anguish, and severe emotional

distress.

2.      Punitive damages against the Defendants.

3.      Attorneys' fees.

4.      Costs of the suit.

5.      Injunctive relief; and

6.      Such other relief as the Court may deem proper.


## JURY TRIAL DEMANDED

Plaintiffs hereby demands a trial by jury on all issues stated in this

action.


Date: February 22, 2022

> Respectfully Submitted,
>
> Radner Law Group, PLLC
>
> By:  */s/ Solomon M. Radner*
> Solomon M. Radner
> Attorney for Plaintiffs
> 17515 West Nine Mile Rd, Suite 1175
> Southfield, Michigan 48075
> Telephone: (877) 723-6375
> Solomon@Radnerlawgroup.com


**COMPLAINT**                    - 28 -

The Law Office of Keith Altman

By: Keith Altman (*pro hac vice applied for*)
Attorney for Plaintiffs
33228 West 12 Mile Road - Suite 375
Farmington Hills, Michigan 48331
Telephone: (248) 987-8929
keithaltman@kaltmanlaw.com